UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-22598-BLOOM/Otazo-Reyes

AZUMI LLC and AZUMI LTD,

    Plaintiffs,

v.

LOTT & FISCHER, PL,

    Defendant.

_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Lott & Fischer, P.L.'s ("Defendant" or "L&F") Motion to Dismiss Complaint with Prejudice, ECF No. [50] ("Motion"). Plaintiffs Azumi LLC and Azumi Ltd. (together, "Plaintiffs" or "Azumi") filed a Response, ECF No. [60] ("Response"),[1] to which Defendant filed a Reply, ECF No. [66]. The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.    BACKGROUND**

This case arises from allegedly bad advice given by Defendant in the course of Plaintiffs' efforts to open a restaurant in Boston. As alleged in the Complaint, Azumi Ltd. operates a global brand of Japanese-style restaurants under the brand name "Zuma," and is an English and Welsh entity with its principal place of business in London. ECF No. [1] ¶¶ 2, 6. L&F is an intellectual property law firm that has represented Azumi in connection with trademark and licensing matters. *Id.* ¶ 7.

---

[1] Plaintiffs' Response is entitled "Defendant's Response to Motion to Dismiss," which the Court assumes to be a scrivener's error.

In 2007, Azumi began opening Zuma brand restaurants in the United States and discovered that the "ZUMA" trademark in the United States was held by a Boston-based company called B.B. Kitchen, Inc., which operated a Tex-Mex restaurant in Boston named "Zuma Tex-Mex Grill." *Id.* ¶ 9. Also in 2007, Azumi brought an unsuccessful challenge to B.B. Kitchen's ownership of the ZUMA trademark. *Id.* ¶ 11. As a result, Azumi, represented by L&F, entered negotiations with B.B. Kitchen resulting in a Settlement Agreement, ECF No. [2-2], and License Agreement, [2-3] (together, the "Agreements"). *Id.* ¶ 16. Those negotiations included the exchange of numerous communications between L&F and representatives for B.B. Kitchen (the "August 2007 Letters"), *see* ECF Nos. [2], [2-1], which evidenced the parties' intent. *Id.* ¶¶ 12-14.

The Settlement Agreement contains a provision in which Azumi agreed not to open a restaurant using the term ZUMA within a defined territory, which includes Boston, for so long as B.B. Kitchen operates its restaurant or sells food products in that territory. *Id.* ¶ 17; ECF No. [2-2] ¶ 6. The License Agreement, also negotiated by L&F, contains a provision in which Azumi agreed not to use ZUMA in connection with Tex-Mex restaurant services or Tex-Mex food products. *Id.* ¶ 20; ECF No. [2-3] ¶ 2.

In 2017, Azumi LLC was formed to operate a Zuma restaurant in Boston. *Id.* ¶ 24. In August 2017, an Azumi representative sent an email to an L&F attorney to determine if opening a Zuma restaurant in Boston would affect the Agreements with B.B. Kitchen. *Id.* ¶ 29. According to the Complaint, L&F advised Azumi that there was nothing in the License Agreement to prevent opening a Zuma restaurant in Boston, but Azumi alleges that L&F failed to review the Settlement Agreement in rendering the advice. *Id.* ¶ 30-33. Relying on L&F's advice, Azumi leased space in Boston for the operation of a Zuma restaurant. *Id.* ¶ 34. L&F continued to advise Azumi thereafter. *Id.* ¶ 35.

Azumi further alleges that in late 2018, L&F had located the Settlement Agreement in their files, realized that it prohibited Azumi from opening a Zuma restaurant in Boston, realized that L&F had given Azumi incorrect legal advice, and then planned a strategy to protect L&F's interests. *Id*. ¶ 42. On February 1, 2019, L&F sent Azumi an e-mail explaining that L&F had located the Settlement Agreement and noted the discrepancy between what the Agreements permitted. *Id*. ¶¶ 44-47. L&F also advised Azumi regarding various options as a result, all of which involved incurring economic cost or changing the Zuma name. *Id*. ¶ 49. Shortly thereafter, Azumi, L&F, and attorneys from Meister Seelig ("MS"), another law firm representing Azumi, held a telephone call, during which L&F did not disclose the existence of the August 2007 Letters. *Id*. ¶¶ 52-55. During the telephone call, MS advised Azumi to engage in litigation with B.B. Kitchen, which Azumi alleges L&F knew would be unsuccessful based upon the August 2007 Letters. *Id*. ¶ 59. According to Azumi, L&F did not disclose the August 2007 Letters to protect its own interests. *Id*. ¶ 60.

In late May 2019, L&F received a letter from B.B. Kitchen's lawyers, asserting that Azumi was in breach of the Settlement Agreement. *Id*. ¶ 63. L&F advised Azumi to negotiate a settlement but continued not to provide the August 2007 Letters. *Id*. ¶ 64. Despite requests from MS for documents related to the Agreements, L&F did not disclose the August 2007 Letters until June 7, 2019, after MS had rejected B.B. Kitchen's position regarding Azumi's purported breach of the Settlement Agreement. *Id*. ¶¶ 66-67; 70-72. Azumi alleges that the failure to provide the August 2007 Letters was deliberate on the part of L&F. *Id*. ¶ 73.

At the end of June 2019, B.B. Kitchen filed suit against Azumi in Massachusetts state court and sought a preliminary injunction. *Id*. ¶¶ 74-75. The Massachusetts court granted the injunction, precluding Azumi from operating a Zuma restaurant in Boston. *Id*. ¶ 80. Thereafter, Azumi and

B.B. Kitchen negotiated a settlement, entering into an agreement on August 16, 2019, pursuant to which Azumi paid B.B. Kitchen for dissolution of the injunction, dismissal of the state court action, termination of the Agreements, and clarification of the parties' rights with respect to the ZUMA trademark. *Id*. ¶¶ 82-83.

Plaintiffs thereafter filed their Complaint on August 12, 2021, in the United States District Court for the District of Massachusetts, asserting claims for negligence/malpractice (Count I) and breach of fiduciary duty (Count II). Defendant filed a first motion to dismiss asserting lack of personal jurisdiction before the Massachusetts District Court. ECF Nos. [10]-[12]. The Massachusetts District Court denied the first motion and transferred the case to this Court on August 16, 2022. *See* ECF Nos. [22]-[23]. After the case was transferred, Defendant filed the instant Motion.

In the Motion, Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' claims are barred by the statute of limitations.

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

"Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss . . . . However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing *Cabral v. City of Miami Beach*, 76 So.3d 324, 326 (Fla. 3d DCA 2011) ); *see also Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005) ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (internal quotation marks and citation omitted). "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted).

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Id.*; *see also Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (stating that statute of limitations defect can be raised in motion for summary judgment where failure to comply with statute of limitations does not appear on face of complaint).

### III. DISCUSSION

Defendant argues that the Complaint must be dismissed with prejudice because it was filed after the expiration of the statute of limitations governing legal malpractice claims in Florida. *See* Fla. Stat. § 95.11(4)(a) ("WITHIN TWO YEARS.—An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."). Specifically, Defendant argues that the statute of limitations began to run on February 1, 2019, when L&F sent the e-mail alerting Azumi of the existence of an inconsistency between the Agreements. Plaintiff responds that (1) Defendant's Motion is precluded by Rule 12(g)(2) because Defendant previously sought dismissal of this case in Massachusetts District Court; (2) Azumi's cause of action accrued when it settled the Massachusetts state court litigation with B.B. Kitchen in 2019 under the applicable rule for accrual of legal malpractice claims under Florida law; and (3) even if the legal malpractice claim is barred, the breach of fiduciary duty claim is subject to a four-year statute of limitations.

#### A. The Statute of Limitations Argument Is Not Waived

Rule 12 of the Federal Rules of Civil Procedure provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Based

upon this Rule, Azumi contends that Defendant waived its statute of limitations argument when it was not raised in the first motion to dismiss considered by the Massachusetts District Court. Defendant asserts in essence that the statute of limitations defense was not "available" at the time of filing the first motion to dismiss because the applicable statute of limitations in Massachusetts is three years, rather than two. Upon review, the Court agrees with Defendant.

"A defense is unavailable for purposes of Rule 12(g)(2) if its legal basis did not exist at the time of the answer or pre-answer motion, so that it was for all practical purposes impossible for the defendants to interpose their defense." *Noveshen v. Bridgewater Assocs., LP*, No. 13-CV-61535-KAM, 2015 WL 11170928, at *3 (S.D. Fla. July 20, 2015) (internal citation and quotations omitted); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) ("Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss . . . ."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1384 (3d ed. 2004) ("Subdivision (g) contemplates the presentation of an omnibus preanswer motion in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion.").

Azumi commenced this case by filing the Complaint in Massachusetts District Court on August 12, 2021. In response, L&F requested dismissal, based upon a lack of personal jurisdiction. *See* ECF No. [12]. The Massachusetts District Court denied Defendant's motion to dismiss but transferred the case to this District. ECF No. [22] ("Transfer Order"). In the Transfer Order, the Massachusetts District Court noted a potential statute of limitations issue, which supported transfer, as opposed to outright dismissal. *See id*. at 11. However, the fact that Defendant had indicated a potential statute of limitations defense does not mean that that defense was "available"

for purposes of Rule 12(g)(2). Here, the parties appear to assume that when this case was filed in Massachusetts, the court would apply Massachusetts law and the corresponding statute of limitations to the claims asserted in the Complaint. However, now that the case has been transferred to Florida, Florida law applies, and Florida's statute of limitations governs. As a result, a defense based upon the Florida statute of limitations on legal malpractice was indeed not available to Defendant upon filing the first motion to dismiss and the argument is not waived.

Plaintiffs' reliance upon *Conseal International Incorporated v. Bolster America, Inc.*, No. 16-cv-61027, 2016 WL 6581876, at *3-4 (S.D. Fla. Nov. 7, 2016), is misplaced as it is factually and procedurally distinguishable. In *Conseal*, the defendant sought dismissal based on lack of personal jurisdiction and sufficiency of the complaint's allegations with respect to only one of the claims asserted. 2016 WL 6581876, at *1. The parties then agreed that the defendant would withdraw the motion, consent to personal jurisdiction, and file a subsequent 12(b)(6) motion with respect to the complaint. *Id*. The defendant filed the subsequent motion, in which it argued that all claims were insufficiently pleaded, and the plaintiff responded that the subsequent motion was improper under Rule 12(g). *Id*. at *2. Upon review, this Court agreed that the motion was improper regarding any claims other than the one claim the defendant sought to challenge in its first motion to dismiss. *Id*. at *2. Here, however, based upon the parties' apparent agreement that Florida law applies, Defendant is not raising an additional improper argument as there existed no legal basis for Defendant to assert the argument based on the Florida statute of limitations when this case was before the Massachusetts District Court.

As such, the Court considers the merits of Defendant's statute of limitations argument.

### B. When the Statute of Limitations Began to Run

In arguing that Plaintiff's claims are barred by Florida's two-year statute of limitations on legal malpractice actions, Defendant asserts that the clock begins to run when a plaintiff could have determined that malpractice had occurred in a manner that would cause damages—which in this case was February 2019. Plaintiff disagrees, arguing that its cause of action accrued when it settled the underlying litigation with B.B. Kitchen in August 2019. In essence, the parties disagree with respect to when the clock starts for purposes of the statute of limitations in Florida.[2]

In general, the statute of limitations begins to run when a cause of action accrues. "A cause of action accrues when the last element constituting the cause of action occurs. Fla. Stat. § 95.031(1). The parties agree that a cause of action for legal malpractice has three elements: "1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Off. of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007); *see also Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 39 (Fla. 2009) (same). As previously noted, legal malpractice actions are subject to a two-year statute of limitations, which "run[s] from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(4)(a). "The event which triggers the running of the statute of limitations is notice to or knowledge by the injured party that a cause of action has accrued in his favor, and not the date on which the negligent act which caused the damages was actually committed." *Watts v. Goetz*, 311 So. 3d 253, 260 (Fla. 2d DCA 2020) (alteration and citation omitted). Indeed, the "[m]ere

---

[2] In their Response, Plaintiffs concede that their claim is not premised upon litigation related malpractice, in which redressable harm does not occur until a judgment becomes final. *See Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998) ("[W]hen a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.").

knowledge of potential harm from malpractice is insufficient to trigger the two year statute of limitations period." *Clemente v. Freshman*, 760 So. 2d 1059, 1061 (Fla. 3d DCA 2000).

### i. First Injury Rule and Finality Accrual Rule

A legal malpractice claim is hypothetical and damages are speculative until a plaintiff sustains a redressable harm. *Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 3d 111, 116 (Fla. 2d DCA 2009). Essentially, Defendant argues that Plaintiffs suffered a redressable harm in February 2019, when L&F sent the e-mail informing Azumi of the inconsistency in the Agreements, advised Azumi as to its options which involved incurring economic cost or changing the Zuma brand name, and Plaintiffs retained MS to handle responding to B.B. Kitchen's notice of breach and subsequent proceedings. Defendant urges the Court to apply the "first injury rule." Plaintiffs assert that Defendant suffered no redressable harm until it resolved the Massachusetts state court proceedings with B.B. Kitchen and urge the Court to apply the "finality accrual rule."

The Florida Supreme Court has described the distinction between the two as follows:

> The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefore, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at the time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. Lower courts have labeled this the "first injury" rule. However, a special rule applies when the plaintiff's damages exist by virtue of an enforceable court judgment. In these circumstances, the statute of limitations begins to run when the judgment becomes final. We now label this the "finality accrual rule."

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla. 2016) (citations omitted). Furthermore, "to determine whether to apply the rule in any particular case, [the Florida Supreme Court has] considered a series of factors and applied the finality accrual rule where those factors favored the rule's application." *Id*. Those factors include where the application of the finality accrual rule would

10

> (1) avoid the needless disruption of an ongoing, preexisting relationship between the plaintiff and the defendant that would occur if we required an earlier lawsuit; (2) shield a potential plaintiff from having to argue inconsistent positions in separate actions; (3) ensure that a plaintiff's damages are sufficiently real and concrete prior to a judgment in the underlying litigation; (4) encourage the efficient use of scarce judicial resources; and (5) promote the policies underlying statutes of limitations in the case at bar.

*Id.*

### ii. The Finality Accrual Rule Applies

Here, the Court finds that the factors weigh in favor of applying the finality accrual rule. First, as to whether the parties had an ongoing, preexisting relationship that would be disrupted if an earlier lawsuit were required, the Complaint is silent. At the very least, the Complaint indicates that the parties had an ongoing, preexisting relationship at the time Defendant claims that the clock began to run. *See* ECF No. [1] ¶¶ 63-64, 72. Defendant contends that by the time the statute of limitations had expired, Plaintiffs had accused Defendant of malpractice, and thus their preexisting relationship could not have been disrupted. However, there is no indication in the Complaint or the moving papers as to whether the relationship continued further between Plaintiffs and Defendant, and therefore, the first factor is neutral.

The second factor weighs in favor of Plaintiffs. Defendant argues that Plaintiffs would not have to argue inconsistent positions, as the case involving Plaintiffs and B.B. Kitchen ended long before the time Defendant contends the statute of limitations had run. The Court disagrees. Indeed, as alleged in the Complaint, prior to learning of the August 2007 Letters and Defendant's failure to disclose them, Plaintiffs took the position that they had a good faith and valid argument to operate a Zuma restaurant in Boston, notwithstanding the inconsistency between the Agreements. *Id.* ¶ 64. In relation to *this* case, the Complaint alleges that Defendant's failure to disclose and properly advise prevented Plaintiffs from effectively arguing any ambiguity in the Agreements

and defending against B.B. Kitchen's claim of breach. *See id*. ¶¶ 73, 78-79. Thus, in the proceedings involving B.B. Kitchen, Plaintiffs' position was that the inconsistency was not material, while in this case, Plaintiffs allege that the inconsistency was critical. Those positions are inconsistent.

The third factor also weighs in favor of Plaintiffs. In examining this factor, the main concern is to avoid claims that are "hypothetical and damages that are speculative." *Kipnis*, 202 So. 3d at 863 (alterations and citation omitted). "A settlement or final judgment creates certainty as to whether the plaintiff has or has not been injured." *Id*. Defendant contends that Plaintiffs incurred damages as of the February 1, 2019 e-mail; but here, the damages claimed by Plaintiffs for Defendant's malpractice are the payment to B.B. Kitchen after the settlement reached in August 2019, and other related costs. ECF No. [1] ¶ 87. Contrary to Defendant's contention, those damages were not sufficiently concrete at the point Defendant urges the clock began to run. Rather, they were hypothetical and speculative prior to the settlement between B.B. Kitchen and Plaintiffs in August 2019.

Regarding the fourth factor, the Florida Supreme Court has noted that "the finality accrual rule is preferable where, by allowing for a plaintiff to delay filing a lawsuit, a defendant would receive additional time to correct any problems or errors that might cause the plaintiff problems in the underlying litigation, perhaps obviating the need for any secondary litigation." *Kipnis*, 202 So. 3d at 865 (citation omitted). Upon review, the Court finds that applying the finality accrual rule encourages efficient use of scarce judicial resources. Had L&S reviewed both Agreements and sufficiently advised Plaintiffs, and after discovering its alleged mistake, promptly disclosed the August 2007 Letters, Plaintiffs may not have taken the position with respect to the operation of the Agreements in the ensuing litigation with B.B. Kitchen. Therefore, the litigation may not have

been necessary. As alleged in the Complaint, however, Defendant withheld the August 2007 Letters until Plaintiffs were already involved in the dispute with B.B. Kitchen regarding the breach of the Settlement Agreement. *See* ECF No. [1] ¶¶ 69-73. As noted in *Kipnis*, "[a]llowing plaintiffs to delay filing their secondary lawsuits provides potential defendants with more time to correct or mitigate any problems they may have caused, decreasing the likelihood that secondary litigation would be necessary." *Id*. at 865. This factor therefore weighs in favor of Plaintiffs.

Regarding the fifth factor, "the purpose of the statute of limitations includes protecting defendants from unfair surprise and stale claims." *Id*. at 866 (citation omitted). Defendant asserts that litigation should not be delayed because evidence may get lost or witnesses may forget facts, but does not point to any such specific concern in this case. In addition, Defendant cannot claim unfair surprise, since according to Defendant, Plaintiffs had accused L&F of malpractice prior to the date it asserts the statute of limitations expired – presumably in February 2021. Defendant also argues that Plaintiffs could have sued Defendant shortly after the settlement with B.B. Kitchen in August 2019 but chose not to do so until August 2021. However, the timing of when Plaintiffs filed suit—whether the day after the statute began to run, or the day before it expired—is not particularly relevant, since the relevant inquiry is not when Plaintiffs could have filed suit, but when they actually did.[3] Upon review, the Court finds that this factor also weighs in Plaintiffs' favor.

Nevertheless, Defendant argues that the finality accrual rule cannot apply in this case because there is no enforceable judgment and no litigation arose directly from the alleged malpractice. But Defendant's interpretation is too narrow. *Kipnis* acknowledges that the finality accrual rule may apply even in the absence of an actual judgment. 202 So. 3d at 863 ("A settlement

---

[3] Based upon the Court's conclusion, the Court need not consider the tolling agreement, ECF No. [50-1], between the parties, which in any event does not materially alter the analysis.

or final judgment creates certainty as to whether the plaintiff has or has not been injured."). In addition, the Court does not agree that no litigation arose due to the alleged malpractice. As alleged in the Complaint, Azumi relied upon the legal advice given by L&F in 2017 in deciding to move forward with plans to open a Zuma branded restaurant in Boston. *See* ECF No. [1] ¶ 34. Taking the Complaint's allegations as true, it was Plaintiffs' actions based on L&F's allegedly incorrect advice regarding the effect of the License Agreement that ultimately resulted in Plaintiffs' involvement in litigation with B.B. Kitchen.

Defendant relies upon two cases, *Mikhaylov v. Bilzin Sumberg Baena Price & Axelrod LLP*, 346 So. 3d 224 (Fla. 3d DCA 2022) and *Evanston Insurance Company v. William Kramer & Associates, LLC*, 815 F. App'x 443 (11th Cir. 2020), to support its argument that the Court should apply the first injury rule rather than the finality accrual rule in this case. Upon review, however, the Court does not find either case to be persuasive here.

In *Mikhaylov*, the plaintiff asserted a professional negligence claim against the law firm that provided legal advice and prepared agreements to protect his financial interests in a business relationship that eventually soured and resulted in his losing significant financial interests and control. 346 So. 3d at 226. After discovering the alleged fraud scheme perpetrated by his business partner and aided by the law firm to deprive the plaintiff of his interests and control, the plaintiff initiated a probate action and a civil action against his business partner and co-conspirators. *Id*. In the civil case, the court appointed a receiver, which resulted in filing a bankruptcy petition on behalf of an entity funded by the plaintiff. *Id*. In his subsequent professional negligence case against the law firm, the plaintiff argued that his malpractice claim would not accrue until resolution of the bankruptcy proceeding. *Id*. at n.3. In determining that the statute of limitations barred the plaintiff's claim for malpractice against the law firm, the appellate court agreed with

the trial court's conclusion that resolution of the bankruptcy case would not determine whether the law firm had committed malpractice. *Id*. at 228. In contrast, here, the state court litigation with B.B. Kitchen did not "reduce, or possibly eliminate, the damages already suffered by Plaintiffs[,]" such that it would have constituted mitigation of loss that already occurred, as in *Mikhaylov*. *Id*. Rather, as alleged, the state court litigation with B.B. Kitchen determined that the damages claimed by Plaintiffs in this case are causally related to Plaintiffs' malpractice claim. Thus, *Mikhaylov* is not particularly helpful here.

Similarly, in *Evanston*, two insurance companies provided coverage for a property, and the plaintiff company providing excess coverage. 815 F. App'x at 444. After the property sustained hurricane damage, the insurance companies hired the defendant to investigate and adjust the claim. *Id*. The defendant sent checks for payment under the primary insurance policy—one of which was sent to a company with a mortgagee interest in the property. *Id*. The defendant, however, did not inform the plaintiff insurance company of the mortgagee's interest, and the plaintiff never paid the mortgagee when it paid the excess policy limits. *Id*. Thereafter, the mortgagee sued the excess insurer, which resulted in the excess insurer paying $250,000 to defend the suit, and $1,000,000 over policy limits. *Id*. at 444-45. The excess insurer then sued the defendant for negligence. *Id*. at 445. In agreeing that the suit was barred by the statute of limitations, the Eleventh Circuit focused on one allegation in the complaint—that the result of the alleged negligence was the plaintiff's incurring "legal fees and expenses in the amount of $250,002.89 to defend . . . the [underlying] lawsuit." *Id*. (alteration added). As a result, the Eleventh Circuit applied the first injury rule, reasoning that the plaintiff incurred at least some of the legal fees claimed as damages prior to the time the plaintiff alleged that defendant knew, or should have known, of the mortgagee's interest. *Id*. Here, the claimed damages are not the legal fees and expenses as in *Evanston*. Rather, the

15

Complaint alleges that Plaintiff's damages are the payment to B.B. Kitchen to settle the underlying litigation and "other related costs." ECF No. [1] ¶ 87. As such, *Evanston* does not support the outcome Defendant urges here.

Instead, the Court finds the case law relied upon by Plaintiffs to be persuasive. For example, in *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So. 2d 1051, 1052-53 (Fla. 2001), the defendant attorneys represented the sellers and drafted agreements used in the sale of stock in two medical centers. The buyer threatened to sue when the centers' profits decreased. *Id*. at 1052. Thereafter, the parties negotiated a return of the stock, but the buyers subsequently refused to repurchase the shares. A dispute thereafter ensued over funds held in escrow by the defendant attorneys. *Id*. at 1053. During the course of resulting litigation, including claims by the buyer against the sellers for fraud, the sellers learned from another attorney that the stock purchase agreements violated Florida law, and were probably invalid for failing to include disclosure language. *Id*. The sellers later sued the defendant attorneys for malpractice, claiming that the attorneys failed to advise regarding the disclosure requirement and that the sale agreement had to acknowledge the disclosures. *Id*. As here, the claimed damages were the amount of the settlement and the expense of defending against the buyer's underlying lawsuit. *Id*. Under those circumstances, the Florida Supreme Court concluded, as the Court does here, that the cause of action against the attorneys did not accrue until the underlying proceeding involving the sellers and buyer had settled. *Id*. at 1054.

Similarly, in *Watts*, a man sued his former attorney for legal malpractice arising out of a mediated settlement agreement in his divorce. 311 So. 3d at 255. The man and his ex-wife had an earlier prenuptial agreement containing an alimony provision that could only be modified in writing. *Id*. The defendant attorney represented the man in renegotiating the terms of the prenuptial

agreement, including the alimony provision. *Id*. at 255-56. The renegotiated alimony provision, however, waived the parties' rights to modify the obligation with respect to duration or amount with two exceptions, which did not include the ex-wife's entering a supportive relationship. *Id*. Sometime later, when the ex-wife moved in with her boyfriend, the man learned that the alimony provision in the mediated settlement agreement did not allow a reduction or termination of his alimony obligation. *Id*. at 256-57. The man asserted that his former attorney breached her duty of care by failing to include a supportive relationship clause in the mediated settlement agreement. *Id*. at 257. The attorney argued that the man's claim was barred by the statute of limitations. *Id*. In rejecting the attorney's suggestion that the statute of limitations began to run when the man signed the mediated settlement agreement, the appellate court concluded that "[t]he redressable harm in this case did not occur until the former wife began a supportive relationship and [the man] sustained a loss—that loss being the continued obligation to pay durational alimony while the former wife was maintaining a supportive relationship." *Id*. at 263. Here, based upon the damages alleged, the redressable harm did not occur until Plaintiffs settled with B.B. Kitchen in August 2019.

Based upon the allegations, it is not sufficiently clear from the face of the Complaint that the statute of limitations bars Plaintiffs' claims.[4] *La Grasta*, 358 F.3d at 845-46.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [50]**, is **DENIED**. Defendant shall file its Answer **no later than January 10, 2023**.

---

[4] The Court need not consider or resolve the parties' apparent disagreement with respect to whether a breach of fiduciary duty claim in a malpractice context is subject to a two-year or four-year statute of limitations, since the Court concludes that dismissal of the malpractice claim is not warranted.

Case No. 22-cv-22598-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 27, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record